## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Brent Lanier Lynch,

                Petitioner,

v.

Eddie Miles, *Warden, Stillwater Correctional Facility, Minnesota*,

                Respondent.

Case No. 17-cv-1917 (DWF/TNL)

**REPORT AND RECOMMENDATION**

---

Zachary A. Longsdorf, Longsdorf Law Firm, PLC, 5854 Blackshire Path, Suite 3, Inver Grove Heights, MN 55076 (for Petitioner); and

Peter R. Marker, Assistant Ramsey County Attorney, Ramsey County Attorney's Office, 345 Wabasha Street North, Suite 120, St. Paul, MN 55102 (for Respondent).

---

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on a Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254, (ECF No. 1), and Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus, (ECF No. 7). This action has been referred to the undersigned for a report and recommendation to the Honorable Donovan W. Frank, District Judge for the United States District Court for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.2(b). Based on all the files, records, and proceedings herein, and for the reasons set forth below, this Court recommends that the motion to dismiss be granted and the petition be dismissed.

I.   **PROCEDURAL AND FACTUAL BACKGROUND**

   A. **State District Court**

Petitioner Brent Lanier Lynch called his mother at around 3:00 a.m. on March 3, 2012, "asking for a ride because [his girlfriend, Carolyn Leete,] 'let somebody steal the damn car.'" *State of Minnesota v. Lynch*, 2013 WL 6152187, at *1 (Minn. Ct. App. Nov. 25, 2013) (hereinafter *Lynch I*).[1] Lynch's mother "did not provide Lynch with a ride because she could tell that he had been drinking," and that "Lynch 'gets crazy' and 'it terrifies her' when he drinks." *Id*. Lynch's mother "asked G.J. to pick up Lynch and [Leete]." *Id*. At around 4:00 a.m., G.J. "found Lynch and [Leete] and dropped them off at [Lynch's] Saint Paul residence." *Id*. At around 6:00 a.m., "Lynch called G.J. to the residence to check on [Leete]. G.J. found [Leete] bloody and unresponsive." *Id*. "P.G., a neighbor with nursing training, came over and attempted chest compressions on [Leete]. She observed that [Leete] was cold to the touch. Lynch told P.G. that [Leete] was intoxicated, he tried to throw her on the bed but missed, and her head hit the floor." *Id*. "Another individual, P.J., came over and called 911. Lynch said, 'No, don't call, don't call. I don't know what I'm going to do. Don't call the police; I have to talk to my mom first.'" *Id*. Lynch left the house. *Id*.

Law enforcement arrived at the St. Paul residence, finding Leete's body in a second-floor bedroom "face up and partially clothed on a bed. There were bruises on [Leete's] arms, and marks and scratches on her hands. [Leete's] head was covered in blood that appeared to have come from her mouth, nose, and eyes." *Id*.; *Lynch v. State of*

---

[1] Attached to Respondent's Memorandum as Exhibit 5. (Resp. Mem. Ex. 5, ECF No. 9).

*Minnesota*, 2017 WL 1046304, at *1 (Minn. Ct. App. Mar. 20, 2017) (hereinafter *Lynch II*).[2] Law enforcement further discovered a "large blood splatter about 12 inches in diameter . . . on the wall two feet from [Leete's] head" and "blood at the bottom of the stairs near the back door to the residence, on the stairs to a second-floor landing, on the base of a wooden bookcase, and on the carpet in the second-floor hallway." *Lynch I*, 2013 WL 6152187, at *1. Lynch was apprehended "in the area a short time later after he got into a taxicab. He fought with the police who apprehended him and later said, 'It wasn't supposed to go down like this. This wasn't supposed to happen. It was the alcohol.'" *Id*. Lynch later "told jail staff, 'Please be nice to me. I'm here for a long time.'" *Id*.

The Ramsey County Medical Examiner determined that Leete's cause of death was traumatic head injury due to physical assault, noting that "[Leete] had contusions on the back of her head and chin, lacerations on both lips, left eye contusions, fractured nasal bones, diffuse cerebral edema, subarachnoid hemorrhages, numerous contusions of the body, and a fractured rib." *Id.*; *Lynch II*, 2017 WL 1046304, at *1. Lynch was charged via criminal complaint in Ramsey County District Court on March 6, 2012, with one count of unintentional second-degree murder, in violation of Minn. Stat. § 609.19, subd. 2(1) (2012). (*See* Resp. Mem. Ex. 1, at 6).[3]

"In April 2012, while Lynch was detained in the Ramsey County jail, his cellmate gave a handwritten letter to his own public defender, who turned it over to a prosecutor."

---

[2] Attached to Respondent's Memorandum as Exhibit 15. (Resp. Mem. Ex. 15). Lynch also provided a copy of the opinion with his Petition. (Pet. Ex. 2, ECF No. 1-2, at 4–15).

[3] For all citations to Resp. Mem. Ex., the Court uses the overall pagination provided in the bottom-right corner for consistency, rather than individual document pagination.

*Lynch II*, 2017 WL 1046304, at *1. This letter is "written from Lynch's perspective and is directed to his brother." *Id.*; *Lynch I*, 2013 WL 6152187, at *2; (Resp. Mem. Ex. 2, at 107–10). The "letter writer attempts to persuade Lynch's brother to tell investigators working for Lynch's privately retained attorney that Leete was injured when she accidentally fell down a staircase." *Lynch II*, 2017 WL 1046304, at *1; *Lynch I*, 2013 WL 6152187, at *2; (Resp. Mem. Ex. 2, at 107–10). The "letter writer suggests that Lynch's attorney was aware of and perhaps cooperative in a plan to develop evidence that might exculpate Lynch." *Lynch II*, 2017 WL 1046304, at *1; (Resp. Mem. Ex. 2, at 107–10).

In June 2012, the State of Minnesota filed an amended complaint, adding the charge of intentional second-degree murder, in violation of Minn. Stat. § 609.19, subd. 1(1) (2012), to the already-charged count of unintentional second-degree murder. *Lynch II*, 2017 WL 1046304, at *1; *Lynch I*, 2013 WL 6152187, at *1; (*see* Resp. Mem. Ex. 1, at 6).

The state obtained the jailhouse letter, disclosed it, and indicated it intended to use the letter as evidence against Lynch at trial. *Lynch I*, 2013 WL 6152187, at *2. "At a status conference on August 6, 2012, Lynch's retained attorney informed the district court that he might withdraw from representation due to the possibility that, in light of the letter, . . . he 'would be diminished in the eyes of the jury.'" *Lynch II*, 2017 WL 1046304, at *1. On August 10, 2012, the state sought a ruling that the letter would be admissible at trial. *Id.* On August 13, 2012, Lynch's attorney moved to withdraw as Lynch's counsel. *Id.*; (Resp. Mem. Ex. 2, at 130). On August 15, 2012, at a hearing where Lynch's attorney was represented by his own attorney, the state district court granted Lynch's attorney's

motion to withdraw. *Lynch II*, 2017 WL 1046304, at *1. Lynch was appointed a public defender later that same day. *Id*.

On September 10, 2012, Lynch offered a guilty plea pursuant to a plea agreement to the unintentional-second-degree-murder charge with an agreed-upon sentence of 330 months. *Lynch I*, 2013 WL 6152187, at *2; (*see* Resp. Mem. Ex. 1, at 6). The state district court "rejected the plea, finding that Lynch had not provided a sufficient factual basis. Four days later, Lynch entered an *Alford* plea to intentional second-degree murder under a new plea agreement." *Lynch I*, 2013 WL 6152187, at *2; *Lynch II*, 2017 WL 1046304, at *1. In accordance with the plea agreement, the state dismissed the charge of unintentional second-degree murder. *Lynch II*, 2017 WL 1046304, at *1.

Prior to sentencing, "Lynch moved, pro se, to withdraw his guilty plea, arguing that it was necessary to 'correct a manifest injustice.'" *Lynch I*, 2013 WL 6152187, at *3; *Lynch II*, 2017 WL 1046304, at *1. Lynch argued "that plea withdrawal was necessary because he had received inadequate legal representation from his public defender, that his previous private attorney withdrew from the case without a good reason, and that he felt pressured and coerced into pleading guilty." *Lynch I*, 2013 WL 6152187, at *3. The state district court denied Lynch's motion. *Id.*; *Lynch II*, 2017 WL 1046304, at *1. Lynch was sentenced to 386 months imprisonment and ordered to pay restitution. *Lynch I*, 2013 WL 6152187, at *3; *Lynch II*, 2017 WL 1046304, at *1.

**B.  Lynch's Direct Appeal to the Minnesota Court of Appeals and Beyond**

Lynch appealed his conviction to the Minnesota Court of Appeals. Lynch, via his appellate attorney, argued that "the district court erred in denying his pro se motion to

withdraw his *Alford* plea." *Lynch I*, 2013 WL 6152187, at *3; *Lynch II*, 2017 WL 1046304, at *1; (Resp. Mem. Ex. 1, at 9). Lynch, via his appellate attorney, also challenged his court-ordered restitution obligation. *Lynch I*, 2013 WL 6152187, at *6–*7; *Lynch II*, 2017 WL 1046304, at *1; (Resp. Mem. Ex. 1, at 9).

In a pro se supplemental brief, Lynch raised several additional arguments. First, Lynch argued "that he 'should have been allowed to plead guilty to the original complaint' before it was amended to add the intentional-murder charge." *Lynch I*, 2013 WL 6152187, at *7; (Resp. Mem. Ex. 2, at 74–76). Lynch also argued that the state "district court erred by allowing his retained attorney to withdraw, that the retained attorney was ineffective by withdrawing, and that he was denied the assistance of counsel due to the retained attorney's deficient representation." *Lynch II*, 2017 WL 1046304, at *1; *Lynch I*, 2013 WL 6152187, at *8; (Resp. Mem. Ex. 2, at 77–84). Lynch's conviction was affirmed. *Lynch I*, 2013 WL 6152187, at *8; *Lynch II*, 2017 WL 1046304, at *1.

After the Minnesota Court of Appeals decision, "Lynch exchanged written correspondence with his appellate public defender concerning the issues that might be raised in a petition for further review by the supreme court." *Lynch II*, 2017 WL 1046304, at *2. Lynch's appellate counsel "stated her opinion that, contrary to Lynch's suggestion, the case of *State v. Krause*, 817 N.W.2d 136 (Minn. 2012),[4] did not apply to his case." *Lynch II*, 2017 WL 1046304, at *2. Lynch's appellate counsel "wrote that

---

[4] In *Krause*, Minnesota Supreme Court held that, "in a forfeiture-of-counsel evidentiary hearing [—which is required when the misconduct giving rise to a forfeiture of the right to appointed counsel does not occur in the court's presence—] the defendant is entitled to appropriate due process protections, including adequate notice, the assistance of counsel, the ability to present evidence and to confront and cross-examine witnesses, an impartial decision maker, a decision on the record, and a full explanation for the decision." 817 N.W.2d at 146.

'there is no legal basis for you to claim you were denied the right to counsel or were prejudiced' and that '[y]ou have no constitutional right to the lawyer of your choice or for a private lawyer to be made to continue to represent you when a conflict arises.'" *Id*. "Before stating that conclusion, Lynch's appellate counsel recited relevant facts, including a statement that Lynch was represented by counsel at the August 15 hearing at which his retained attorney sought withdrawal." *Id*. Contrary to that factual representation, however, "Lynch was not represented at that hearing by any attorney other than the attorney who was seeking to withdraw." *Id*. The Minnesota Court of Appeals noted that "Lynch's appellate counsel may have been misled by the first page of the transcript, which states incorrectly that the attorney who represented Lynch's attorney represented Lynch." *Id*. Lynch's appellate counsel "invited Lynch to raise additional issues of his choosing in a *pro se* supplemental petition." *Id*.

Lynch petitioned the Minnesota Supreme Court for review. (Resp. Mem. Ex. 6, at 211–21). Lynch, via his appellate attorney, raised four grounds for relief: (1) that the state district court erred in denying Lynch's pro se motion to withdraw his *Alford* plea; (2) that the state district court erred in its restitution decision; (3) that Lynch was denied the benefit of a plea bargain, as raised in his pro se supplemental brief to the Minnesota Court of Appeals; and (4) that Lynch "was denied his right to counsel and the right to the effective assistance of counsel" as raised in his pro se supplemental brief to the Minnesota Court of Appeals. (Resp. Mem. Ex. 6, at 212–13). In support of the fourth ground for review, Lynch specifically noted the Minnesota Supreme Court "should

accept review to clarify when counsel may withdraw, especially when it may affect a defendant's constitutional right to counsel." (Resp. Mem. Ex. 6, at 221).

Lynch also moved the Minnesota Supreme Court to accept his pro se supplemental petition for further review. (Resp. Mem. Ex. 7). In this supplemental pro se brief, Lynch sought to raise two legal issues for review. First, Lynch argued the state district court erred in allowing his attorney to withdraw "without holding [a] proper hearing" and the state district court erred in addressing his attorney's motion to withdraw without affording Lynch the right to counsel. (Resp. Mem. Ex. 7, at 305). Lynch also raised an apparent due process claim, but that claim is not explicated within the pro se supplemental petition. (Resp. Mem. Ex. 7 *passim*). Rather, the pro se supplemental petition generally re-hashes Lynch's pro se brief to the Minnesota Court of Appeals. (Resp. Mem. Ex. 7 *passim*). The Minnesota Supreme Court denied Lynch's motion, declining to accept his pro se supplemental petition for review. (Resp. Mem. Ex. 8). The Minnesota Supreme Court then denied review of Lynch's case. *State of Minnesota v. Lynch*, No. A13–0167 (Minn. Jan. 29, 2014); (Resp. Mem. Ex. 9); *see Lynch II*, 2017 WL 1046304, at *2.

Lynch petitioned the United States Supreme Court for a writ of certiorari. (Resp. Mem. Ex. 10). Lynch raised two issues for review. First, Lynch questioned whether it is "permissible under the Sixth and Fourteenth Amendments for a state court to conduct a contested disqualification hearing without ensuring that the accused's interests in keeping the services of his paid counsel are protected by having substitute counsel to represent the accused at the disputed-facts hearing." (Resp. Mem. Ex. 10, at 314). Second, Lynch

questioned whether it is "permissible under the Fifth, Sixth and Fourteenth Amendments to discharge an accused's paid counsel of choice after a potential conflict is only alleged, but never substantiated, and without holding a *Curcio*[5] [h]earing." (Resp. Mem. Ex. 10, at 314). Lynch's certiorari petition was denied. *Lynch v. Minnesota*, 135 S. Ct. 203 (Oct. 6, 2014).

### C. State Postconviction Petition

Following conclusion of his direct appeal, Lynch, with the assistance of counsel, petitioned for state postconviction relief alleging four claims: "(1) he was denied effective assistance of appellate counsel, (2) he was denied the assistance of counsel at a critical stage, (3) the district court violated his right to his counsel of his choice, and (4) he was appointed an attorney with a conflict of interest." *Lynch II*, 2017 WL 1046304, at *2. In January 2016, the state postconviction court held a motion hearing and then, in March 2016, issued an order denying Lynch's petition. *Id.*; (Resp. Mem. Ex. 11; Pet. Ex. 1, ECF No. 1-1, at 1–15, ECF No. 1-2, at 1–3). The state postconviction court concluded that "Lynch's claim of ineffective assistance of appellate counsel fails because he did not demonstrate that appellate counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by appellate counsel's performance. The postconviction court further concluded that the three underlying claims [were] procedurally barred." *Lynch II*, 2017 WL 1046304, at *2.

---

[5] In *United States v. Curcio*, the United States Court of Appeals for the Second Circuit held that where a defendant asserts his right to be represented by attorney of his choice despite that attorney's conflict of interest, the court is to alert defendant to the substance of dangers to representation by said attorney having divided loyalties in as much detail as court's experience and its knowledge of the case will permit and the court must assess whether the request for said representation is knowing and intelligent. 680 F.2d 881 (2d Cir. 1982).

## D.  Appellate Review of the State Postconviction Petition

Lynch appealed the denial of his postconviction petition to the Minnesota Court of Appeals, again with the assistance of counsel. (Resp. Mem. Ex. 12). Lynch argued that the state postconviction court "erred by denying his petition with respect to his first claim, which alleges that his appellate counsel was ineffective in three ways." *Lynch II*, 2017 WL 1046304, at *2. Lynch also argued that the state postconviction court "erred by concluding that the three claims underlying his ineffective-assistance claim, standing alone, are procedurally barred." *Id.* at *4. The three claims were as follows: "First, Lynch contend[ed] that his appellate counsel was ineffective because she did not argue on direct appeal that Lynch was denied his right to counsel at the August 15 hearing on his retained attorney's motion to withdraw." *Id.* at *3. "Second, Lynch contend[ed] that his appellate counsel was ineffective because she did not argue on direct appeal that Lynch was denied his right to counsel of his choice when the district court granted his attorney's motion to withdraw." *Id.* at *3. And third, "Lynch contend[ed] that his appellate counsel was ineffective because she did not argue on direct appeal that Lynch's public defender had a conflict of interest on the ground that the public defender was affiliated with the part-time public defender who previously had given the jailhouse letter to a prosecutor." *Id.* at *4.

The Minnesota Court of Appeals found Lynch could not establish that his appellate counsel was ineffective for not arguing on direct appeal that he was denied his right to counsel at the August 15, 2012 hearing, could not establish that his appellate counsel was ineffective for not arguing on direct appeal that he was denied his right to counsel of his choice, and could not establish that his appellate counsel was ineffective

for not arguing on direct appeal that he was denied his right to counsel because his public defender had a conflict of interest. *Id*. Thus, the Minnesota Court of Appeals found the postconviction court did not err by concluding that Lynch's claim of ineffective assistance of appellate counsel was without merit. *Id*.  Further, the Minnesota Court of Appeals found the postconviction court did not err in concluding that Lynch's second, third, and fourth postconviction claims were procedurally barred. *Id.* at *5. Accordingly, the Minnesota Court of Appeals affirmed the denial of Lynch's postconviction petition. *Id*.

Lynch, again with the assistance of counsel, appealed to the Minnesota Supreme Court. (Resp. Mem. Ex. 16). Lynch raised two grounds for relief. First, Lynch argued that his Sixth Amendment right to counsel of choice was violated. (Resp. Mem. Ex. 16, at 468). Second, Lynch asserted his claims concerning critical stage, right to counsel of choice, and conflict of interest have merit and were improperly denied as procedurally barred. (Resp. Mem. Ex. 16, at 468). The Minnesota Supreme Court denied further review. (Resp. Mem. Ex. 17).

### E.  Federal Habeas Petition

Lynch, assisted by counsel, filed the present habeas petition alleging four grounds for relief. For Ground One, Lynch asserts he received ineffective assistance of appellate counsel during his appeal in violation of his rights under the Sixth Amendment of the United States Constitution. (Pet., at 4–6, ECF No. 1). As to Ground Two, Lynch asserts he was denied his right to counsel at a critical stage of a criminal proceeding when the August 15, 2012 hearing occurred while he was unrepresented in violation of his rights

under the Fifth, Sixth, and Fourteenth Amendments. (Pet., at 6–8). In Ground Three, Lynch asserts he was improperly denied his Sixth Amendment right to counsel of choice where his retained counsel was discharged based on a purported, but never substantiated, conflict of interest. (Pet., at 9–11). And for Ground Four, Lynch asserts he was denied his Sixth Amendment right to counsel that is free from conflict of interest where the counsel he was appointed after the discharge of his retained counsel had an actual conflict of interest. (Pet., at 11–13). Lynch filed a memorandum supporting his Petition, expanding upon the asserted grounds for relief. (Pet. Mem. in Supp., ECF No. 2).

Respondent moved to dismiss Lynch's Petition. (ECF No. 7). Respondent argues that Lynch has failed to preserve properly each of his claims for federal habeas review. (Resp. Mem., at 12, ECF No. 8). Respondent argues that Lynch's independent grounds for relief, that is Grounds Two, Three, and Four, were raised for the first time in Lynch's state postconviction petition and now, like then, are procedurally barred. (Resp. Mem., at 12–20). Concerning Ground One, Respondent asserts Lynch failed to raise the claim before the Minnesota Supreme Court when appealing the denial of his state postconviction petition. (Resp. Mem., at 20–23). Through footnotes in his brief, Respondent also argues in the alternative that Lynch's claims are meritless for the reasons concluded by the Minnesota state courts. (Resp. Mem., at 12 n.5, 14 n.6, 16 n.8, 20 n.11).

Lynch filed a responsive memorandum, urging denial of Respondent's motion to dismiss. (Pet. Mem. in Opp., ECF No. 10). Lynch argues that Ground One, his ineffective assistance of appellate counsel claim, was exhausted in the state courts. (Pet. Mem. in

Opp., at 4–8). Lynch also argues that any procedural default of Grounds Two, Three, and Four is excused by cause and prejudice. (Pet. Mem. in Opp., at 9–12). Finally, Lynch argues that his claims are meritorious. (Pet. Mem. in Opp., at 12–14).

## II.    ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 governs a federal court's review of habeas corpus petitions filed by state prisoners. Section 2254 is used by state prisoners alleging they are "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may not grant habeas corpus relief to a state prisoner on any issue decided on the merits by a state court unless the proceeding "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or it "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state prisoner "must exhaust his remedies in state court. In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition." *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see* 28 U.S.C. § 2254(b)(1). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation omitted). "To be fairly presented 'a petitioner is required to refer to a specific

federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" *Cox v. Burger*, 398 F.3d 1025, 1031 (8th Cir. 2005) (quoting *Barrett v. Acevedo*, 169 F.3d 1155, 1161–62 (8th Cir. 1999)). However, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Cox*, 398 F.3d at 1031 (quoting *Barrett*, 169 F.3d at 1161–62). Additionally, "a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32.

If a habeas petition contains claims that have not been exhausted in the state courts, the reviewing court "must then determine whether the petitioner has complied with state procedural rules governing post-conviction proceedings, i.e., whether a state court would accord the petitioner a hearing on the merits." *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997) (citing *Harris v. Reed*, 489 U.S. 255, 268–70 (1989) (O'Connor, J., concurring)). "A state prisoner procedurally defaults a claim when he violates a state procedural rule that independently and adequately bars direct review of the claim by the United States Supreme Court." *Clemons v. Luebbers*, 381 F.3d 744, 750 (8th Cir. 2004) (citing *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)). Thus, "a state prisoner who fails to satisfy state procedural requirements forfeits his right to present his federal claim through a federal habeas corpus petition, unless he can meet strict cause and prejudice or

actual innocence standards." *Clemons*, 381 F.3d at 750 (citing *Murray v. Carrier*, 477 U.S. 478, 493–96 (1986)).

For the federal court to enforce a state procedural bar, it must be clear that the state court would hold the claim procedurally barred. *Clemons*, 381 F.3d at 750. The relevant question then becomes "whether there is, under the law of [Minnesota], any presently available state procedure for the determination of the merits of th[ese] claim[s]." *Thomas v. Wyrick*, 622 F.2d 411, 413 (8th Cir. 1980). Minnesota law provides that once the petitioner has directly appealed his sentence "all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." *State v. Knaffla*, 243 N.W.2d 737, 741 (Minn. 1976); *McCall v. Benson*, 114 F.3d 754, 757 (8th Cir. 1997). "Claims are considered 'known' [under the *Knaffla* rule] if they were available after trial and could have been raised on direct appeal." *Vann v. Smith*, Case No. 13-cv-893 (SRN/JSM), 2015 WL 520565, at *6 (D. Minn. Feb. 9, 2015) (citing *Townsend v. State*, 723 N.W.2d 14, 18 (Minn. 2006)).

### A. Ground One

Ground One is Lynch's chief claim for relief. In this claim, Lynch asserts he received ineffective assistance of appellate counsel during his appeal in violation of his rights under the Sixth Amendment of the United States Constitution. Related to Ground One, Lynch asserts his appellate counsel informed him that "there was no basis for his request to pursue claims that he was improperly denied his right to counsel of choice based on a purported, but unsubstantiated conflict of interest, where [Lynch] was not represented and was not allowed a meaningful chance to participate." (Pet., at 4). Lynch

asserts his appellate counsel had "incorrectly determined that [Lynch] was in fact represented at the hearing wherein his retained counsel was discharged from his case." (Pet., at 4).

Essentially, Lynch asserts his appellate counsel was ineffective in failing to pursue certain claims in his direct appeal, all of which Lynch asserts serve as independent grounds for relief in his habeas petition. In those underlying claims, Lynch asserts that he was denied his right to counsel at a critical stage of a criminal proceeding when the August 15, 2012 hearing occurred while he was unrepresented (Ground Two), that he was improperly denied his Sixth Amendment right to counsel of choice where his retained counsel was discharged based on a purported, but never substantiated, conflict of interest (Ground Three), and that he was denied the right to counsel free from conflict of interest by being appointed an attorney with a conflict of interest (Ground Four). Lynch further interweaves Grounds Two, Three, and Four with Ground One, asserting that if this Court agrees with the Minnesota postconviction courts that Grounds Two, Three, and Four are procedurally barred, the ineffective assistance of appellate counsel claim asserted in Ground One serves as external cause sufficient to excuse his procedural default. Thus, resolution of Ground One is paramount to resolving Lynch's Petition in its entirety.

Lynch did not bring Ground One on direct appeal to the Minnesota Court of Appeals, nor to the Minnesota Supreme Court. Indeed, such a claim would be unlikely where the attorney Lynch claims provided ineffective assistance was the attorney conducting the appeal; rather, such a claim is often asserted through a postconviction

petition following conclusion of the direct appeal process. Lynch in fact followed this path, asserting through his postconviction petition that he was denied effective assistance of appellate counsel. The state postconviction court concluded that Lynch's claim of ineffective assistance of appellate counsel failed because he did not demonstrate that appellate counsel's performance fell below an objective standard of reasonableness or that he was prejudiced by appellate counsel's performance. *See Lynch II,* 2017 WL 1046304, at *2. On appeal, Lynch argued the postconviction court "erred by denying his petition with respect to his first claim, which alleges that his appellate counsel was ineffective in three ways." *Id*. The Minnesota Court of Appeals upheld the denial of Lynch's state postconviction petition, finding Lynch could not establish that his appellate counsel was ineffective. *Id.* at *4.

Lynch then appealed to the Minnesota Supreme Court, raising two claims, claims that shifted from those originally presented to the state district court and Minnesota Court of Appeals. Lynch presented two issues for review: (1) his Sixth Amendment right to counsel of choice was violated; and (2) his claims of critical stage, right to counsel of choice, and conflict of interest have merit and were improperly denied as procedurally barred. The Minnesota Supreme Court denied further review.

For Ground One to be appropriate for federal habeas review, Lynch must have exhausted his remedies in state court so as to provide the Minnesota state courts the opportunity to act on his claims. *O'Sullivan*, 526 U.S. at 842; *see* 28 U.S.C. § 2254(b)(1). This "opportunity" is provided when a prisoner "fairly presents" his claim to each appropriate state court, including the state supreme court with powers of discretionary

review. *Baldwin*, 541 U.S. at 29. Lynch presented Ground One to the state postconviction court. *See Lynch II*, 2017 WL 1046304, at *2. Lynch presented Ground One to the Minnesota Court of Appeals. *Id.* Lynch failed, however, to fairly present Ground One to the Minnesota Supreme Court. Rather, Lynch presented Grounds Two, Three, and Four to the Minnesota Supreme Court, claims which underpin Ground One to some extent, but failed to bring his ineffective assistance of counsel claim directly to the Minnesota Supreme Court.[6] While Lynch argues these claims are related to Ground One, "[p]resenting a claim that is merely similar to the federal habeas claim is not sufficient to satisfy the fairly presented requirement." *Cox*, 398 F.3d at 1031 (quoting *Barrett*, 169 F.3d at 1161–62).

Lynch argues in his reply to Respondent's motion that he has exhausted Ground One, asserting that he sufficiently raised the factual background for his claim on appeal to the Minnesota Supreme Court. (ECF No. 10, at 4–8). Rather than supporting his argument, however, the language used in Lynch's appeal to the Minnesota Supreme Court demonstrates a conscious choice to pursue other claims: "In his postconviction action, Mr. Lynch *made* a claim of ineffective assistance of appellate counsel for failing to raise any such claims." (Resp. Mem. Ex. 16, at 475) (emphasis added). Then, in the section of his appeal immediately following this sentence, Lynch asks the Minnesota Supreme Court to "review . . . all issues presented to the Minnesota Court of Appeals as

---

[6] In a similar vein, Lynch's Petition brings four grounds for habeas relief, but his accompanying memorandum only provides analysis as to Grounds Two, Three, and Four. (Pet. Mem. in Supp., at 16–41) (discussing counsel of choice, critical stage, and conflict of interest claims). While Lynch's memorandum discusses the Minnesota Court of Appeals' opinion as to his ineffective assistance of appellate counsel claim, he makes no specific argument as to Ground One itself. (Pet. Mem. in Supp., at 14–16).

set out in Section 3 of this Petition." (Resp. Mem. Ex. 16, at 475). Turning to the aforementioned Section 3 of Lynch's appeal, that section references claims that match Lynch's current Grounds Two, Three, and Four: (1) his Sixth Amendment right to counsel of choice was violated; and (2) his claims of critical stage, right to counsel of choice, and conflict of interest have merit and were improperly denied as procedurally barred. (Resp. Mem. Ex. 16, at 468). The past tense used in Lynch's description of his ineffective assistance of appellate counsel claim is significant, particularly in light of his reference to the claims he was then choosing to present to the Minnesota Supreme Court, claims which did not include an ineffective assistance of appellate counsel claim. Further demonstrating his conscious decision to abandon the claim, Lynch does not use the phrase "ineffective assistance of appellate counsel," or anything similar thereto, when providing analysis as to why his appeal should be reviewed by the Minnesota Supreme Court. (Resp. Mem. Ex. 16, at 475–81).

Moreover, the fact that Lynch was appealing the Minnesota Court of Appeals' opinion—an opinion which principally analyzed Lynch's ineffective assistance of appellate counsel claim—does not save Lynch's failure to present the claim directly to the Minnesota Supreme Court. *Baldwin*, 541 U.S. at 32 ("[A] state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."); *Foster v. Fabian*, Case No. 07-cv-4317 (JRT/JJG), 2009 WL 921063, at *8 (D. Minn. 2009) ("[A]s other Courts in this District have held, 'incorporation' of a lower court decision or briefs

submitted to such a lower court, without identifying the federal issue in the petition for review, is insufficient to fairly present a federal claim for the purposes of exhaustion.").

Because Lynch did not fairly present Ground One to all applicable Minnesota courts, specifically in this instance the Minnesota Supreme Court, this Court concludes Lynch has failed to exhaust Ground One. *See Fraction v. Minnesota*, 678 F.Supp.2d 908, 916–18 (D. Minn. Dec. 11, 2008).

Where a habeas petition has an unexhausted claim, the reviewing court "must then determine whether the petitioner has complied with state procedural rules governing post-conviction proceedings, i.e., whether a state court would accord the petitioner a hearing on the merits." *McCall*, 114 F.3d at 757 (citing *Harris*, 489 U.S. at 268–70). Thus, the question becomes "whether there is, under the law of [Minnesota], any presently available state procedure for the determination of the merits of th[is] claim." *Thomas*, 622 F.2d at 413.

Under Minnesota law, Lynch could not now file a second state postconviction petition raising an ineffective assistance of counsel claim. *See Williams v. State of Minnesota*, 869 N.W.2d 316, 318 (Minn. 2015) (holding that postconviction claims of ineffective assistance of trial and appellate counsel in a second petition for postconviction relief could have been raised through a first petition, and therefore procedurally barred under *Knaffla*). It is clear Lynch knew of his ineffective assistance of appellate counsel claim because he brought that claim to the state postconviction court and Minnesota Court of Appeals. Lynch's failure to present his ineffective assistance of appellate

counsel claim to the Minnesota Supreme Court now prevents him from bringing that claim anew in the Minnesota state courts and, consequently, in this federal habeas action.

Out of respect for finality, comity, and the orderly administration of justice, "a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). "The cause and prejudice requirement shows due regard for States' finality and comity interests while ensuring that 'fundamental fairness remains the central concern of the writ of habeas corpus.'" *Id.* at 393 (quoting *Strickland v. Washington*, 466 U.S. 668, 697 (1984)). "This rule is nearly absolute, barring procedurally-defaulted petitions unless a habeas petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or show actual innocence." *Reagan v. Norris*, 279 F.3d 651, 656 (8th Cir. 2002) (internal citations and quotation omitted); *Martinez v. Ryan*, 566 U.S. 1, 9–10 (2012); *Coleman*, 501 U.S. at 750–51. If a prisoner fails to demonstrate cause, the court need not address prejudice. *Mathenia v. Delo*, 99 F.3d 1476, 1481 (8th Cir. 1996).

To obtain review of a defaulted constitutional claim, "the existence of cause for procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). "Some examples of factors external to the defense which prevent a petitioner from developing the factual or legal basis of a claim are interference by the state, ineffective assistance of counsel, conflicts of interest, and legal novelty." *Mathenia*, 99 F.3d at 1480–81. Ineffective

assistance of counsel claims generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 488–89.

Here, Lynch does not claim actual innocence. Lynch does not assert that the State of Minnesota interfered with his claim in some way. Nor does he assert that his claim was novel. Moreover, Lynch does not assert his postconviction attorney—who also serves as his attorney on this federal habeas petition—was ineffective in his appeal to the Minnesota Supreme Court. *See Murphy v. King*, 652 F.3d 845, 850 (8th Cir. 2011) ("Here, Murphy has shown neither cause and prejudice for the default, nor that a failure to consider the claim would result in a fundamental miscarriage of justice. The basis for this claim was available to counsel, and 'the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default.'") (quoting *Murray*, 477 U.S. at 486).

Rather, Lynch claims "the context of [his] arguments" were "changed slightly" in "trying to obtain review at the Minnesota Supreme Court." (ECF No. 10, at 8). Lynch asserts this change occurred due to the Minnesota Court of Appeals' opinion and the requirements of Minn. R. Crim. P. 29.04, subd. 3, 4.[7] (ECF No. 10, at 8). These assertions are unavailing, particularly where Lynch relies on a state procedural rule—Minn. R. Crim. P. 29.04—to excuse his compliance with another state procedural rule—*Knaffla*. Lynch's claims remained the same from the state postconviction court to the

---

[7] Minn. R. Crim. P. 29.04, subd. 3 and 4 govern the contents of a petition for review to the Minnesota Supreme Court—such as word limits and a concise statement of the legal issues presented—and the criteria used by the Minnesota Supreme Court to grant discretionary review.

Minnesota Court of Appeals, claims which were mirrored in Lynch's federal habeas petition. Lynch has not proffered any reasonable explanation why he could not have continued his claim that he received ineffective assistance of appellate counsel when he appealed to the Minnesota Supreme Court. Absent such a showing by Lynch, this Court cannot conclude any cause provides excuse for Lynch's procedural default. Accordingly, this Court finds Ground One is procedurally defaulted and cannot be raised in this federal habeas petition.

### B. Grounds Two, Three, and Four

As noted above, Ground One is tied to Grounds Two, Three, and Four to the extent that Lynch, through his state postconviction petition, asserted he received ineffective assistance of appellate counsel because his appellate counsel failed to raise Grounds Two, Three, and Four on direct appeal. Lynch raised Grounds Two, Three, and Four at all levels of his state postconviction proceedings, with the state courts holding that those three claims were procedurally defaulted. The Court now looks to each claim.

In Ground Two, Lynch asserts he was denied his right to counsel at a critical stage of a criminal proceeding when the August 15, 2012 hearing occurred while he was unrepresented in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments. As factual support, Lynch characterizes the August 15, 2012 hearing as one to "determine the admissibility of the disputed [jailhouse letter]." (Pet., at 7). Lynch then asserts he was not allowed "a meaningful chance to participate" before his retained attorney was discharged. (Pet., at 7).

Lynch admits he did not raise Ground Two on direct appeal, asserting that his appellate counsel told him he had "no viable claim regarding the lack of counsel at the August 15, 2012 hearing," which Lynch asserts was based on his appellate counsel's "incorrect assessment that Mr. Lynch was actually represented at the August 15, 2012 hearing." (Pet., at 7). Lynch did not raise this claim himself in his pro se supplemental brief to the Minnesota Court of Appeals, even though in Minnesota a "practice has developed informally whereby dissatisfied appellants are advised by counsel to state what their contentions are, and those contentions are then included in a supplemental brief." *Case v. State*, 364 N.W.2d 797, 800 (Minn. 1985).[8] In his postconviction petition, Lynch asserted he was denied the assistance of counsel at a critical stage, but this claim was deemed procedurally barred. *See Lynch II,* 2017 WL 1046304, at *2. The Minnesota Court of Appeals affirmed. *Id.* at *5. Lynch then presented Ground Two to the Minnesota Supreme Court, which denied review.

Because Lynch failed to present Ground Two to the Minnesota Court of Appeals in the first instance on his direct appeal, he did not exhaust remedies in state court such that the Minnesota state courts had the opportunity to act on his claims. *O'Sullivan*, 526 U.S. at 842; *see* 28 U.S.C. § 2254(b)(1). Moreover, the Minnesota courts have already applied a procedural bar to review of Ground Two, holding Lynch procedurally defaulted

---

[8] Lynch appears to have attempted to raise this issue in his pro se supplemental petition for further review to the Minnesota Supreme Court, asserting that the state district court erred in allowing his attorney to withdraw "without holding [a] proper hearing" and the state district court erred in addressing his attorney's motion to withdraw without affording Lynch the right to counsel. (Resp. Mem. Ex. 7, at 305). The Minnesota Supreme Court denied Lynch's motion to file his pro se supplemental petition for further review. Moreover, Lynch's certiorari petition to the United States Supreme Court raised two issues, both of which are encapsulated by Ground Two. (*See* Resp. Mem. Ex. 10, at 314). Lynch cannot resuscitate an unexhausted claim, however, by raising it later in the direct appeal process.

the claim when he brought the claim in his state postconviction petition. Such a decision is generally not reviewable. *Clemons*, 381 F.3d at 750 ("[F]ederal courts should not consider whether the state court properly applied its default rule to the claim; federal courts do not sit to correct a state court's application of its ordinarily adequate procedural rules . . . except in unusual circumstances.") (internal citation omitted). As such, Ground Two of Lynch's Petition is not reviewable.

In Ground Four Lynch asserts he was denied his Sixth Amendment right to counsel that is free from conflict of interest where the counsel he was appointed had an actual conflict of interest after the discharge of his retained counsel. As factual support for this claim, Lynch asserts that the handwritten jailhouse letter was never proven to have been obtained by Lynch's cellmate. (Pet., at 11). Lynch's cellmate provided that letter to his attorney at the Ramsey County Public Defender's Office, who subsequently turned the letter over to the Ramsey County Attorney's Office. (Pet., at 11). Lynch asserts that, by being appointed an attorney from the Ramsey County Public Defender's Office, he was provided an attorney with an inherent conflict of interest in that his appointed counsel would have been required to cross-examine a fellow Ramsey County Public Defender's Office attorney as well as Lynch's cellmate (represented by the same Ramsey County Public Defender's Office attorney) to "determine the authenticity and admissibility" of the jailhouse letter. (Pet., at 11). Lynch asserts that because the state district court made no inquiry into this apparent conflict of interest, he is entitled to automatic reversal of his conviction. (Pet., at 11).

Lynch did not bring this claim on direct appeal to the Minnesota Court of Appeals, nor to the Minnesota Supreme Court. Indeed, Lynch concedes as much in his Petition, noting that this claim was not raised by his appellate counsel. (Pet., at 12). Lynch asserts, however, that he "was not aware that counsel for his cellmate was provided through the Ramsey County Public Defender's Office until research conducted after his direct appeal because the state district court took no steps to inquire into the potential conflict." (Pet., at 12). Lynch brought this claim in his state postconviction petition, but the postconviction court determined it to be procedurally barred. *See Lynch II,* 2017 WL 1046304, at *2. The Minnesota Court of Appeals agreed. *Id.* at *5.

Because Lynch failed to present Ground Four to the Minnesota Court of Appeals and Minnesota Supreme Court, he did not exhaust remedies in state court such that the Minnesota state courts had the opportunity to act on his claims. *O'Sullivan*, 526 U.S. at 842; *see* 28 U.S.C. § 2254(b)(1). Moreover, the Minnesota courts have already applied a procedural bar to review of Ground Four, holding Lynch procedurally defaulted the claim when he brought the claim in his state postconviction petition. Such a decision is generally not reviewable. *Clemons*, 381 F.3d at 750. As such, Ground Four of Lynch's Petition is not reviewable.

In Ground Three, Lynch asserts he was improperly denied his Sixth Amendment right to counsel of choice where his retained counsel was discharged based on a purported, but never substantiated, conflict of interest. On direct appeal, Lynch argued via his pro se supplemental brief to the Minnesota Court of Appeals, that the state district court erred in the standard it applied when allowing his retained attorney to withdraw.

(Resp. Mem. Ex. 2, at 77). On appeal to the Minnesota Supreme Court, Lynch asserted that he was denied his right to counsel because the state district court used an incorrect legal standard when it permitted Lynch's retained attorney to withdraw for a conflict, arguing that the state district court should have "taken into account the full circumstances," including a dispute over fees. (Resp. Mem. Ex. 6, at 213, 221). Lynch asked the Minnesota Supreme Court to grant review to "clarify when counsel may withdraw, especially when it may affect a defendant's constitutional right to counsel." (Resp. Mem. Ex. 6, at 221). Further direct review was denied.

Through his state postconviction petition, Lynch argued that the state district court violated his right to counsel of his choice. *See Lynch II,* 2017 WL 1046304, at *2. This claim was held to be procedurally barred. *See id.* The Minnesota Court of Appeals affirmed. *Id.* On appeal to the Minnesota Supreme Court, Lynch asserted his right to counsel of choice was violated. Review was denied.

Ground Three presents an additional challenge in that Lynch asserts this claim was exhausted in state courts. (Pet., at 9). As with Grounds One, Two, and Four, this Court concludes Lynch has not exhausted Ground Three. On direct appeal, Lynch asserted the standard applied to his retained attorney's motion to withdraw was erroneous. Through his postconviction petition, Lynch shifted his claim from an argument that the incorrect standard was applied to his retained attorney's withdrawal to a claim that he was denied his right to counsel of choice when the state court granted the retained attorney's withdrawal motion. While Lynch would have this Court conclude these claims are one in the same, it cannot. The direct appeal claims focused on the standard applied to

27

evaluating withdrawal of counsel. Indeed, when describing the claim Lynch brought in his pro se supplemental brief to the Minnesota Court of Appeals, Lynch asked the Minnesota Supreme Court to grant review to clarify when counsel may withdraw. (Resp. Mem. Ex. 6, at 221). Challenging the legal standard applicable to when counsel withdraws is not the same claim as challenging whether a criminal defendant has been denied his right to counsel of his choice.

Lynch's retained attorney moved to withdraw due to a possible conflict of interest; he was not involuntarily disqualified. As the Minnesota Court of Appeals held, "Lynch's right to counsel never was in danger . . . because the district court appointed a public defender after allowing his retained attorney to withdraw." *Lynch II*, 2017 WL 1046304, at *4. "It is well settled that a 'criminal defendant does not have the absolute right to counsel of his own choosing.'" *Meyer v. Sargent*, 854 F.2d 1110, 1113–14 (8th Cir. 1988) (quoting *Carey v. State of Minnesota,* 767 F.2d 440, 441 (8th Cir.1985)). A criminal defendant may not "demand that a court honor his waiver of conflict-free representation." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 151–52 (2006). This is because the "essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Wheat v. United States*, 486 U.S. 153, 159 (1988). The Minnesota courts protected Lynch's Sixth Amendment rights by immediately appointing him substitute counsel. There is simply no requirement, as Lynch insists, that his retained attorney be forced to continue representation in the face of a potential conflict. *See United States v. DeLuna*, 584 F. Supp. 139, 144 (W.D. Mo. 1984)

("A defense attorney must be free to use all his skills to provide the best possible defense for his client, and the mere existence of a temptation in the abstract or the mere potential for conflict is so grave that ordinarily a lawyer should withdraw.").

The Minnesota courts, via Lynch's postconviction petition, have already applied a procedural bar to review of Ground Three, holding Lynch procedurally defaulted the claim. Said decision by the Minnesota courts is generally not reviewable. *Clemons*, 381 F.3d at 750.[9]

Even were the Court to begin consideration of claims to which the Minnesota courts held to be procedurally defaulted, Lynch cannot show any cause excusing this default. *See Dretke*, 541 U.S. at 388. As noted, Lynch interweaves Grounds Two, Three, and Four with Ground One—his claim that he received ineffective assistance of appellate counsel. Thus, Lynch asserts, his ineffective appellate counsel serves as cause to excuse his procedural default. Such a claim of ineffective assistance of counsel, however, generally must "be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 488–89. This Court has already concluded that Lynch failed to fairly present his ineffective assistance of appellate counsel claim to the Minnesota courts by not including it as a ground for review when appealing to the Minnesota Supreme Court. *See Edwards v. Carpenter*, 529 U.S. 446, 453 (2000) (holding that an ineffective assistance of counsel claim asserted as cause

---

[9] Even if Ground Three were considered exhausted by Lynch and, further, that the Minnesota courts' application of a procedural bar to said claim were considered error, this Court still could not entertain it. As concluded above, Grounds One, Two, and Four were unexhausted by Lynch. Such "mixed" federal habeas petitions containing both exhausted and unexhausted claims must be dismissed. *Rose v. Lundy*, 455 U.S. 509, 510, 522 (1982).

for another procedurally defaulted federal claim can itself be procedurally defaulted, and, unless the state prisoner can satisfy the cause and prejudice standard for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim). As such, Lynch's ineffective appellate counsel claim cannot serve as the cause excusing default.

In sum, Grounds Two, Three, and Four of Lynch's habeas petition were procedurally barred by the Minnesota courts. The application of a procedural bar by state courts is generally not reviewable. Moreover, Lynch cannot rely on ineffective assistance of appellate counsel as cause for his default where he has procedurally defaulted that claim as well. Therefore, this Court concludes all of Lynch's claims are procedurally barred and his habeas petition must be dismissed.[10]

### C. Certificate of Appealability

Pursuant to Rule 11 of the Rules Governing § 2254 cases, the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Federal district courts may not grant a certificate of appealability unless the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this standard, the petitioner must show "that the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the

---

[10] While not reaching the merits of Lynch's claims, this Court is highly doubtful any of Lynch's claims for relief would survive scrutiny. The August 15, 2012 hearing would likely be considered nonadversarial in nature, defeating Lynch's arguments that it constituted a critical stage in his criminal proceeding and that he should have had counsel representing him. Lynch was not losing his Sixth Amendment right to counsel at that hearing. Nor was the court depriving him of his right to counsel of choice. Rather, his retained attorney found it necessary to withdraw due to a possible conflict of interest. Lynch has not pointed to any case law that requires forcing an attorney to continue representation in the face of professional obligations requiring withdrawal.

issues deserve further proceedings." *Flieger v. Delo*, 16 F.3d 878, 882–83 (8th Cir. 1994). For purposes of appeal under 28 U.S.C. § 2253, the Court concludes that it is unlikely that reasonable jurists would find the question of whether Lynch is entitled to relief debatable, or that some other court would decide this petition differently. The Court therefore recommends that a certificate of appealability not issue.

[Continued on next page.]

## III.    RECOMMENDATION

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.    Respondent's Motion to Dismiss Petition for Writ of Habeas Corpus, (ECF No. 7), be **GRANTED**.

2.    The Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254, (ECF No. 1), be **DISMISSED**.

3.    A certificate of appealability not issue.


Date: January 30, 2018                          _____s/ Tony N. Leung_____
                                                Tony N. Leung
                                                United States Magistrate Judge
                                                District of Minnesota

                                                *Lynch v. Miles*
                                                Case No. 17-cv-1917 (DWF/TNL)

## <u>NOTICE</u>

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).